UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ARCH COAL, INC. et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 4:05CV00712 ERW |
| | ) |
| FEDERAL INSURANCE CO., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court upon Defendant Federal Insurance Company's Motion for Summary Judgment [doc. #62] and Plaintiffs' Motion for Summary Judgment [doc. #66].

**I.   BACKGROUND FACTS**[1]

This case involves a dispute concerning an insurance company's refusal to defend a certain lawsuit filed in a Wyoming state court. Plaintiff Arch Coal, Inc. ("Arch Coal") is a Delaware corporation with its principal place of business in St. Louis, Missouri. Arch Coal carries out its operations through several direct and indirect mining subsidiaries and derives its income from the sale of coal produced by these subsidiaries.[2] One of Arch Coal's indirect mining subsidiaries is Plaintiff

---

[1] The Background Facts are taken from Plaintiffs' Statement of Uncontroverted Facts and Federal Insurance Company's Statement of Uncontroverted Facts. The facts cited by the Court are facts to which the parties agree there is no dispute.

[2] Arch Coal has direct or indirect ownership interests in approximately twenty-six separate entities.

1

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Thunder Basin Coal Company, LLC ("Thunder Basin")[3] which operates the Black Thunder Mine near Wright, Wyoming. Arch Coal provides all of its subsidiaries, including Thunder Basin, with services that are common and necessary to all of the subsidiary operating companies including purchasing,[4] legal,[5] human resources,[6] risk management,[7] sales,[8] and information systems services.

On July 27, 2001, Defendant Federal Insurance Company ("Federal") issued Energy Industries Insurance Coverage Policy No. 3711-00-10 (the "Policy") to Arch Coal, with the effective dates of July 31, 2001, through July 31, 2002. Arch Coal's Director of Risk Management, Denise Hartling, who is located in St. Louis, Missouri, was responsible for negotiating and purchasing the Policy. The Policy was negotiated and purchased through the St. Louis office of Arch Coal's broker, Marsh USA, Inc. The Policy covers the liabilities of Arch Coal, its subsidiaries, and their employees throughout the United States and abroad. The Policy insures against liability for bodily injury, among other things, and provides that Federal will defend claims for such bodily injury.

On June 1, 2004, a lawsuit styled *The American National Bank of Cheyenne, as Conservator*

---

[3] Arch Coal owns Arch Western Acquisition Corporation, which in turn owns 99% of Arch Western Resources, LLC, which in turn owns Thunder Basin.

[4] For example, the mining equipment used by Thunder Basin is purchased by Arch Coal.

[5] For example, the Arch Coal legal department provides legal services as needed to Thunder Basin.

[6] For example, the Arch Coal human resources department serves as Thunder Basin's human resources department.

[7] For example, Arch Coal negotiates and purchases insurance, including general liability insurance, to cover Arch Coal and all of its subsidiaries, their operations, and their employees.

[8] For example, sales services for coal mined by Arch Coal's direct and indirect subsidiaries are provided by Arch Coal.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

*of the Estate of Leslie Roy "Les" Butts, et al. v. Michael Hannifan, Kevin Hampleman, and Ag-Chem Equipment Co., Inc.*, Cause No. 25735, ("Wyoming Action") was filed in the Sixth Judicial District Court for Campbell County, Wyoming (the "Butts Complaint"). Michael Hannifan and Kevin Hampleman, defendants in the Wyoming Action and employees of Thunder Basin, are named Plaintiffs in the present suit.[9] The Butts Complaint alleges that Mr. Butts, a Thunder Basin employee working at the Black Thunder Mine, was injured severely when rubble sloughed off of a highwall[10] and fell onto a vehicle he was operating. After the Butts Complaint was filed, Arch Coal notified Federal and requested that Federal provide a defense. Federal initially denied coverage based on the "Employers Liability" section of the Policy. However, after Arch Coal pointed out that the sued individuals were covered employees, Federal determined that the "Employers Liability" exclusion did not apply. Federal then denied coverage by asserting that, because the Butts Complaint alleged "willful, wanton and intentional misconduct, we do not believe the policy's requirement of bodily injury caused by an 'accident' can ever be satisfied." Pls. Ex. O. Federal also asserted the applicability of Exclusion Number 7 of the Policy, which provides that coverage shall not apply to "[b]odily injury or property damage expected or intended from the standpoint of the insured." *Id.* Further, in explaining its decision to deny coverage, Federal stated that, pursuant to a particular Wyoming statute, Mr. Butts was "availing himself of the right to sue co-employees for what is tantamount to intentionally tortious conduct." *Id.* Federal claimed that, without asserting such intentional conduct, Mr. Butts's recovery would be limited to workers' compensation. *Id.* As such,

---

[9] Neither Arch Coal nor Thunder Basin, both of which are Plaintiffs in the present suit, are named as defendants in the Wyoming Action.

[10] A "highwall" is an unexcavated face of exposed rock and coal in a surface mine.

3

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Federal claimed that the Butts Complaint did not trigger the duty to defend because it could only be successful under Wyoming law if it alleged intentionally tortuous conduct, which Federal asserted would not qualify as an "occurrence" under the Policy. *Id.*

After Federal refused to defend the Wyoming Action, Plaintiffs filed this suit seeking a declaratory judgment that Federal is obligated to defend Mr. Hannifan and Mr. Hampleman in the Wyoming Action and also seeking to recover attorneys' fees that have been incurred to date in defending Mr. Hannifan and Mr. Hampleman as a result of Federal's refusal to do so. Plaintiffs contend that the undisputed material facts demonstrate that the Butts Complaint triggered Federal's duty to defend Mr. Hannifan and Mr. Hampleman. Federal argues that, because Mr. Hannifan's and Mr. Hampleman's actions are alleged to have been intentional, it is not required to defend in the Wyoming Action.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The United States Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

(1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Id*.

If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23. "Thus, where the moving party can point to the absence of any evidence satisfying a necessary element of a claim, such as damages, and the non-moving party fails to produce any such evidence, summary judgment is properly entered." *Meterlogic, Inc. v. KLT, Inc.*, 368 F.3d 1017, 1018 (8th Cir. 2004).

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 249. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

## III. DISCUSSION

### A. Law Governing Interpretation of the Policy

#### 1. *Missouri Law Governs Interpretation of the Policy*

As an initial matter, the Court must consider which state's law governs the interpretation of the Policy. The Policy itself does not contain a choice of law provision and does not otherwise indicate which state's law governs. Plaintiffs argue that Missouri law should govern the interpretation of the Policy, while Federal argues that the Policy should be interpreted in accordance with Wyoming law.

Missouri has adopted Sections 188 and 193 of the Restatement (Second) of Conflict of Laws (1971) for the purpose of determining which state's law governs the interpretation of an insurance policy which does not contain a choice of law provision. *Viacom, Inc. v. Transit Cas. Co.*, 138 S.W.3d 723, 724-25 (Mo. 2004). Pursuant to Section 188, the rights and duties of the parties are determined by the law of the state with the most significant relationship to the transaction and the parties. Rest. 2d Conflict of Laws § 188(1). The contacts to be taken into account include: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." *Id.* § 188(2). Further, in accordance with Section 193, "[t]he validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal

6

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

location of the insured risk during the term of the policy," unless some other state has a more significant relationship. *Id.* § 193. Generally, "[t]he location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state." *Id.* § 193 cmt. b. However, "where the policy covers a group of risks that are scattered throughout two or more states," the location of the risk has less significance. *Id. See also Viacom*, 138 S.W.3d at 725 (location of risk has less significance where risks are scattered throughout two or more states).

As for the first two § 188 factors, the Policy was negotiated by Denise Hartling, Arch Coal's Director of Risk Management, who is located at Arch Coal's headquarters in St. Louis County, Missouri. Arch Coal employed the Marsh USA brokerage office in St. Louis, Missouri as its broker for negotiation of the Policy. The parties agree that any meetings regarding the Policy took place in St. Louis between Arch Coal, Marsh, and Federal representatives and that the Policy was delivered to Arch Coal at its headquarters in Missouri. These first two factors weigh strongly in favor of applying Missouri law. The second two § 188 factors, place of performance and location of subject matter of the contract, are somewhat more difficult to evaluate. The contract was performed in Missouri and various other states, and the subject matter of the contract is in Missouri as well as several other states. In this particular case, the risk at issue is located at the Black Thunder Mine in Wyoming, which is operated by Thunder Basin. However, Thunder Basin is not Arch Coal's only subsidiary and was not the only location of risk. In fact, Arch Coal has a number of subsidiaries engaged in mining operations throughout the United States, and all of them are covered by the Policy. Thus, at the time the Policy was negotiated, the parties had in mind not a single location of the insured risk, but, rather, intended that the Policy insure risks across a multitude of states.

7

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Accordingly, there is no single principal location of the insured risk and these second two factors carry less weight than they otherwise would.[11] Thus, these second two factors cannot be said to weigh in favor of either Missouri or Wyoming law because the risks are spread across several states. *See* Rest. 2d Conflict of Laws § 193 cmt b. As for the final factor, Arch Coal and its subsidiaries are incorporated in Delaware, while Federal is incorporated under the laws of Indiana. Arch Coal is headquartered in Missouri and Federal's principal place of business is in New Jersey. Mr. Hannifan and Mr. Hampleman are employees of Thunder Basin, which is located in Wyoming. This factor weighs slightly in favor of applying Missouri law.

The § 188 and § 193 factors weigh in favor of interpreting the Policy in accordance with Missouri law. While the claim in this case does arise from an accident and subsequent litigation in Wyoming, the balance of factors in the Restatement analysis prescribed by Missouri courts weighs in favor of the application of Missouri law.[12]

2. *Missouri Rules of Construction*

In this case, the Court must determine whether Federal has a duty to defend in the Wyoming

---

[11]Federal argues that the location of the particular risk at issue in this case should have utmost significance in the Court's analysis, apparently believing that the facts of this case warrant treating the multiple risks for which Plaintiffs are insured as if each insured risk were insured by a separate policy. Federal relies on *Crown Center Redevelopment Corporation v. Occidental Fire & Casualty Company of North America*, 716 S.W.2d 348, 358-59, a case which applies comment f to § 193. Comment f refers to a specific kind of multiple-risk policy sometimes employed when risks are spread across several states and those several states require different "form" policy language such that the overall policy is actually made up of multiple state-specific policies which insure the risks in each particular state. There is no indication that this type of state-specific policy is applicable in this case, making the *Crown Center* case factually distinguishable.

[12]Indeed, as Plaintiffs point out, the interpretation of an insurance policy insuring risks in multiple jurisdictions should not vary depending upon where a given event giving rise to a claim occurs or which of the insured parties are involved; rather, such an insurance policy should be interpreted uniformly.

8

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Action. General rules of contract interpretation apply to insurance policies; however, because insurance policies are designed to provide protection, they are to be broadly construed to effectuate coverage. *See Weathers v. Royal Indem. Co.*, 577 S.W.2d 623, 626 (Mo. 1979) *and cases cited therein.* Accordingly, a policy limitation or exclusion will be strictly construed against the insurer. *Freeman v. State Farm Mut. Auto Ins. Co.*, 436 F.3d 1033, 1035 (8th Cir. 2006) (applying Missouri law); *JAM Inc. v. Nautilus Ins. Co.*, 128 S.W.3d 879, 893 (Mo. Ct. App. 2004). Importantly, the duty to defend is broader than the duty to indemnify. *McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo. 1999). *See also McCormack*, 989 S.W.2d at 170 (to suggest insured must prove obligation to pay before insurer is required to defend would make duty to defend provision a "hollow promise"). The duty to defend arises when there is a potential for liability based on the facts at the beginning of the case and is not dependant on the probable liability based on facts ascertained through trial. *Id. See also Truck Ins. Exch. v. Prairie Framing*, *LLC*, 162 S.W.3d 64, 79 (Mo. Ct. App. 2005) ("An insurance company has a duty to defend an insured when the insured is exposed to potential liability to pay based on the facts known at the outset of the case, no matter how unlikely it is that the insured will be found liable and whether or not the insured is ultimately found liable.") (emphasis omitted). If, by comparing the allegations in the complaint with the policy, it is determined that the complaint alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend. *McCormack*, 989 S.W.2d at 170-71. "To extricate itself from a duty to defend the insured, the insurance company must prove that there is no possibility of coverage." *Truck Ins. Exch.*, 162 S.W.3d at 79 (emphasis omitted). "The duty to defend potentially insured claims arises 'even though claims beyond coverage may also be present.'" *Id.* (quoting *Superior Equip. Co. v. Md. Cas. Co.*, 986 S.W.2d 477, 482 (Mo. Ct. App.

9

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1998)).

B.  Federal's Duty to Defend in the Wyoming Action

1.  *The Butts Complaint*

The Butts Complaint is brought by American National Bank as the conservator for the Estate of Mr. Butts against Mr. Hannifan, Mr. Hampleman, and Ag-Chem Equipment Company, Inc. It alleges that Mr. Butts, who was an employee of Thunder Basin, was operating a Model 004 Terragator in the area of the Black Thunder Mine on January 22, 2002 when "rubble from the south highwall of the east/west box cut sloughed off to the road below, and struck the Model 004 Terragtor operated by Les Butts." Pls. Ex. J, ¶ 11. The Butts Complaint further alleges that "[a] portion of the rubble from the south wall penetrated the cab of the Terragator, striking Les Butts and injuring him, fracturing his spine and rendering him paraplegic, and causing him brain injury in addition to other severe injuries." Pls. Ex. J, ¶ 14. Counts One and Two of the Butts Complaint are brought against Mr. Hannifan and Mr. Hampleman, respectively, in their respective capacities as safety manager and general manager at the Black Thunder Mine. Count One alleges that Mr. Hannifan "was charged with responsibility for the safety and work conditions of the employees at the mine," and that he "was generally and specifically aware of hazards associated with employees in the east/west box cut because of the high probability of overburden falling from the highwalls." Pls. Ex. J, ¶¶ 16-17. According to the Butts Complaint, although Mr. Hannifan was "aware that the hazards in the east/west box cut were extremely dangerous, [he] willfully, wantonly, and/or intentionally required Les Butts to work there anyway." Pls. Ex. J. ¶ 19. Further, it is alleged that Mr. Hannifan "willfully, wantonly and/or intentionally disregarded the need to act as Safety Manager to prevent employees from being in this area, and disregarded his awareness of the high probability of serious injury or

10

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

death," and that this conduct was a substantial factor in causing Mr. Butts's injuries. Pls. Ex. J, ¶¶ 21-22. Count Two of the Butts Complaint is brought against Mr. Hampleman and contains allegations substantially similar to the allegations contained in Count One.[13]

  2. *The Policy*

The Policy covers the liabilities of Arch Coal, its subsidiaries, and the employees of Arch Coal and the subsidiaries. *See* Pls. Ex. F and G. Under the terms of the Policy, Federal agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage . . . caused by an occurrence." Pls. Ex. E, Sec. I, Cov. A.1. The Policy also provides that Federal has "the right and duty to defend any suit seeking those damages." *Id.* In the Policy, "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Pls. Ex. H, Sec. V.9.

  3. *Comparison of the Butts Complaint with the Policy*

To determine whether Federal has a duty to defend in the Wyoming Action, the Court compares the allegations in the Butts Complaint with the Policy to determine whether the Butts Complaint alleges facts that give rise to a claim potentially within the Policy's coverage. *See McCormack*, 989 S.W.2d at 170-71. To avoid a duty to defend, Federal must demonstrate that there is no possibility of coverage. *See Truck Ins. Exch.*, 162 S.W.3d at 79. So long as a potentially insured claim is present, it is of no consequence that claims beyond coverage might also be present. *See id.*

Federal's first reason for refusing to defend is based on its contention that the Butts Complaint

---

[13] Counts Three and Four of the Butts Complaint are brought against Ag-Chem Equipment Company and are not relevant to the Motions for Summary Judgment currently before the Court.

11

does not allege an occurrence, as defined by the Policy, and that it therefore has no duty to defend. Specifically, Federal contends that Wyo. Stat. § 27-14-140(a) (the "Wyoming Statute") compels the Court to construe the allegations against Mr. Hannifan and Mr. Hampleman as amounting to allegations of intentional conduct which were not accidental, thereby precluding any possibility that an occurrence took place. According to Federal, the only way Mr. Butts, as an employee injured in the course of his employment, can recover compensation in excess of workers' compensation benefits from a co-employee is by demonstrating the co-employee intended to injure him. Federal explains that, under Wyoming law, workers' compensation benefits are the exclusive remedy available to a person injured in the course of employment. Wy. Stat. § 27-14-104(a). An exception exists for claims that an injured employee makes against co-employees who "intentionally act to cause physical harm or injury to the insured." *Id.* According to Federal, the Butts Complaint must be read as alleging intentional harm of the type that would fall within the exception to the workers' compensation bar.

The Court finds unpersuasive Federal's argument that the Butts Complaint does not allege facts which could constitute an occurrence within the meaning of the Policy. As an initial matter, the Court notes that the Butts Complaint does not make reference to the Wyoming Statute relied upon by Federal. There is no indication from the face of the Butts Complaint itself that Mr. Butts's causes of action against Mr. Hannifan and Mr. Hampleman are based on the exception to the workers' compensation bar.[14] In any event, the Policy covers "bodily injury or property damage . . . caused by an occurrence." Pls. Ex. E, Sec. I, Cov. A.1. An "occurrence" is defined as an "accident." Pls.

---

[14]It my be that Mr. Butts is in fact attempting to fall within the confines of the Wyoming Statute, as Federal contends. The Court makes no determination as to whether Counts One and Two of the Butts Complaint state a cause of action under Wyoming law.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Ex. H, Sec. V.9. The Policy does not define "accident." If Federal had intended to restrict the use of the term "accident" or to give it some meaning other than its ordinary dictionary definition, it could have defined the term in the Policy. The Court must interpret the Policy, including the undefined term "accident" "broadly so as to effectuate coverage." *Weathers*, 577 S.W.2d at 626. *See N.W. Elec. Power Co-op, Inc. v. Am. Motorists Ins. Co.*, 451 S.W.2d 356, 363 (Mo. Ct. App. 1969) ("'Accident' is a word of varied meaning and of no fixed legal signification. When standing alone and unqualified in a policy of indemnity insurance, it is ambiguous, and the meaning of the word most favorable to the insured should be accepted.") The term "accident" is defined as "an event or condition occurring by chance or arising from unknown or remote causes." *Webster's Third New Int'l Dictionary* (1993) at 11.

In the Wyoming Action, Mr. Butts is alleged to have suffered bodily injury from "rubble from the south highwall," which "sloughed off" and hit the vehicle he was driving. That is, Mr. Butts alleges that he was injured by a rockslide at the Black Thunder Mine. Mr. Hannifan and Mr. Hampleman are alleged to have acted "willfully, wantonly, and/or intentionally" in requiring Mr. Butts to work in an area they knew to be extremely hazardous and from which they should have kept Mr. Butts away. The Butts Complaint does not allege that Mr. Hannifan or Mr. Hamplman caused the rockslide or that they caused the rocks to fall onto Mr. Butts's vehicle, and there is no allegation that the rockslide itself was anything other than an accidental event. Rather, it is essentially alleged that Mr. Hannifan and Mr. Hampleman acted recklessly "and/or" intentionally in placing Mr. Butts in a dangerous situation. Thus, while the Butts Complaint might be said to allege some "intentional" conduct on the part of Mr. Hannifan and Mr. Hampleman, a fair reading of the allegations makes it abundantly clear that the conduct complained of includes the alleged reckless conduct of Mr.

13

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Hannifan and Mr. Hampleman. The allegations of the Butts Complaint cannot be fairly construed to be limited to a claim that Mr. Hannifan or Mr. Hampleman intended to injure Mr. Butts.[15] There is an obvious difference between acting in a reckless disregard of the consequences where a reasonable person would know or have reason to know that there is a high probability that harm will occur and acting with knowledge that intentional acts will produce harm and intending that harm to be produced.[16] In comparing the Butts Complaint with the Policy, it is clear that the Butts Complaint

---

[15]Federal points to a Wyoming case, *Bertagnolli v. Louderback*, 67 P.3d 627 (Wyo. 2003), to support its contention that the allegations of willful and wanton misconduct in the Butts Complaint conclusively preclude any possibility that there has been an occurrence within the meaning of the Policy because an accident cannot be the result of intentional conduct. In *Bertagnolli*, the court addressed the Wyoming Statute, finding that allegations of willful and wanton misconduct fall within the scope of the statutory exception to the workers' compensation bar and could provide a basis for suit by an employee against a co-employee. In this regard, the court stated that "[w]illful and wanton misconduct is the intentional doing of an act, or an intentional failure to do an act, in reckless disregard of the consequences and under circumstances and conditions that a reasonable person would know, or have reason to know that such conduct would, in a high degree of probability, result in harm to another." *Bertagnolli*, 67 P.3d at 632. Accordingly, the court concluded that the workers' compensation bar includes all but intentional acts and willful and wanton misconduct. *Id.* at 633.

Federal's reliance on *Bertagnolli* and other Wyoming cases to support its argument that willful and wanton misconduct is the same as intentional conduct is misplaced. *Bertagnolli* does hold that willful and wanton misconduct falls within the statutory exception to the workers' compensation bar, but nothing in the decision suggests that an intentional act, performed in reckless disregard of its consequences, precludes those consequences from constituting an "occurrence" under the Policy.

[16]*See, e.g.*, *N.W. Elec. Power Co-op., Inc. v. Am. Motorists Ins. Co.*, 451 S.W.2d 356, 362 (Mo. Ct. App. 1969) ("although it be said that the acts producing the results were intentional, where no intent to injure appears, the resulting harm was 'caused by accident' within the policy meaning"); *White v. Smith*, 440 S.W.2d 497, 507 (Mo. Ct. App. 1969) (as matter of public policy, no coverage for damage intentionally inflicted by the insured, "that is, for damage resulting from acts consciously and deliberately done by the insured, knowing that they were wrong, and intending that harm result from said acts"; however "neither policy nor principle excludes from the category of damages caused by accident for which coverage is afforded . . . even damage which might be, for other purposes, regard[ed] as constructively intentional or damage resulting from wanton and reckless conduct"); *cf. Angelina Cas. Co. v. Pattonville-Bridgeton Terrace Fire Prot. Dist.*, 706 S.W.2d 483, 484 (Mo. Ct. App. 1986) (finding complaint based upon intentional acts

14

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

alleges facts that give rise to a claim potentially within the Policy's coverage for an "occurrence."

      b.      *Applicability of Exclusion Number 7*

Federal's second reason for refusing to defend is based on its contention that the Butts Complaint is excluded from coverage under Exclusion Number 7 of the Policy. Pursuant to that exclusion, the Policy does not cover "[b]odily injury or property damage expected or intended from the standpoint of the insured." Pls. Ex. O. Federal argues that the alleged actions of Mr. Hannifan and Mr. Hampleman must be construed as alleging that they expected or intended to inflict injury on Mr. Butts by requiring him to work in an area they knew to be dangerous. "The burden is on [Federal] to establish that an exclusion bars coverage." *Am. Family Mut. Ins. Co. v. Pacchetti*, 808 S.W.2d 369, 370 (Mo. 1991). Federal's reliance on Exclusion Number 7 as a basis for refusing to defend in the Wyoming Action appears to be based on Federal's contention that the Butts Complaint alleges only intentional acts by Mr. Hannifan and Mr. Hampleman in that they "expected or intended" injury to Mr. Butts to occur.

For the exclusion to apply, "[i]t must be shown not only that the insured intended the acts causing the injury, but that the injury was intended or expected from these acts." *Am. Family*, 808 S.W.2d at 371. As explained in Part (a), above, the allegations in the Butts Complaint are considerably broader than mere intentional conduct because the allegations contain reference to Mr. Hannifan's and Mr. Hampleman's reckless conduct. Under Missouri law, a showing that the insured acted recklessly does not compel a finding that the injury was expected. *Am. Family*, 808 S.W.2d at 371. "Although recklessness is sometimes the legal equivalent of intention, liability insurance would be of scant value if coverage were to turn on a jury's finding that the insured acted recklessly

---

excluded by the policy where there were no allegations of negligence or recklessness).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

rather than negligently." *Id.* *See also Steelman v. Holford*, 765 S.W.2d 372, 377 (Mo. Ct. App. 1989) ("wanton and reckless acts do not amount, in law, to intentional acts so as to permit an insurer to deny coverage under an exclusion clause in its liability insurance policy which provides that it does not provide coverage for injury intentionally caused by insured).

## IV. CONCLUSION

In comparing the allegations of the Butts Complaint with the Policy, it is clear that the Butts Complaint alleges facts that give rise to a claim potentially within the Policy's coverage. Federal has failed to demonstrate that there is a dispute as to any material fact and has failed to demonstrate that there is no possibility of coverage under the Policy. Importantly, Federal's duty to defend potentially insured claims arises even though claims beyond the Policy's coverage might also be present. Because Federal has refused to fulfill its duty to defend in the Wyoming Action, Arch Coal has provided for Mr. Hannifan's and Mr. Hampleman's defense by hiring attorneys from the firm of Holland & Hart in Wyoming. Plaintiffs are entitled to reimbursement for the attorneys' fees incurred in defending against the Butts Complaint,[17] and Plaintiffs are entitled to a defense from Federal in the case of *The American National Bank of Cheyenne, as Conservator of the Estate of Leslie Roy "Les" Butts, et al. v. Michael Hannifan, Kevin Hampleman, and Ag-Chem Equipment Co., Inc.*, Cause No. 25736, which was filed in the Sixth Judicial District Court for Campbell County, Wyoming on June 1, 2004.

---

[17]Plaintiffs state that, through June 7, 2006, Holland & Hart billed Arch Coal $216,307.27, and Arch Coal has paid Holland & Hart $199,891.52, for services concerning the defense of the Butts Complaint. Federal has specifically admitted this fact. Therefore, the amount of attorneys' fees incurred through June 7, 2006 is not in dispute.

16

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment [doc. #66] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Federal Insurance Company's Motion for Summary Judgment [doc. #62] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Federal Insurance Company shall reimburse Plaintiffs for the defense expenses incurred to date in the Wyoming Action. Within **TEN (10)** days of the date of this Order, the parties shall submit to this Court a Joint Proposed Order of Judgment concerning the reimbursement of said expenses.

Dated this 25th day of July, 2006.

*/s/ E. Richard Webber*
_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

PDF created with FinePrint pdfFactory trial version www.pdffactory.com